JOHN J. JORDAN, ESQ.  (State Bar No. 175678)
601 Montgomery Street, Suite 850
San Francisco, CA   94111
(415) 391-4814
(415) 391-4308 (FAX)
Email: jjordanesq@aol.com

Attorney for Defendant
VALENTIN CAMACHO TOLEDO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-15-0579-VC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **NOTICE OF MOTION AND MOTION** |
| v. | ) | **FOR COMPASSIONATE RELEASE** |
| | ) | **PURSUANT TO 18 U.S.C. SECTION** |
| VALENTIN CAMACHO TOLEDO, | ) | **3582(c)(1)(A)(i)** |
| | ) | |
| Defendant. | ) | Date:   October 20, 2020 |
| . | ) | Time:  10:30 a.m. |
| _____ | ) | Hon. VINCE CHHABRIA |

**TO:   DAVID ANDERSON, UNITED STATES ATTORNEY, AND FRANK J. RIEBLI,
ASSISTANT UNITED STATES ATTORNEY**

PLEASE TAKE NOTICE that at the time and place specified above, or as soon thereafter

as the matter may be heard, in the courtroom of the Honorable Vince Chhabria, United States

District Judge, the defendant VALENTIN CAMACHO TOLEDO, through his above-listed

counsel, will move and does hereby move this Honorable Court for entry of an order granting

compassionate release from the custody of the Federal Bureau of Prisons ("BOP"), pursuant to

18 U.S.C. § 3582(c)(1)(A)(i).

This request is made in light of the COVID-19 cases at the defendant's current prison, CI

McRae; his health issues, including suffering from obesity and hypertension, which place him at

high risk of suffering severe health issues if he contracts COVID-19; and his immigration status.

This request is made pursuant to the Fifth Amendment to the United States Constitution;

1    18 U.S.C. Section 3582(c)(1)(A)(i); subsequent case law; the accompanying declarations and

2    exhibits; the pleadings and records on file in this matter; and upon such evidence and argument

3    which may be presented prior to and at the hearing on this motion.

4    Dated: September 29, 2020.                    Respectfully submitted,

5

6                                                 */s/ John J. Jordan*
                                                 JOHN J. JORDAN
7                                                 Attorney for Defendant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOHN J. JORDAN, ESQ. (State Bar No. 175678)
601 Montgomery Street, Suite 850
San Francisco, CA 94111
Tel:  (415) 391-4814
Fax: (415) 391-4308
jjordanesq@aol.com

Counsel for Defendant
VALENTIN CAMACHO TOLEDO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 15-0579-VC |
| ) | |
| Plaintiff, ) | |
| ) | **DEFENDANT'S MOTION FOR** |
| v. ) | **COMPASSIONATE RELEASE** |
| ) | **PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)** |
| VALENTIN CAMACHO TOLEDO, ) | |
| ) | Date:   October 20, 2020 |
| ) | Time: 10:30 a.m. |
| Defendant. ) | Hon. VINCE CHHABRIA |
| _____ ) | |

Toledo Mtn Release

1

**TABLE OF CONTENTS**

2   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3   FACTUAL AND PROCEDURAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4   ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5   A.   Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6   B.   Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7   C.   Legal Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8   1.   The Motion is Properly Before the Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9   2.   The Defendant's Waiver in the Plea Agreement Should Not Be Enforced. . . . . . . . . . . 6

10  3.   The COVID-19 Pandemic and Toledo's Health and Immigration Status Constitute
        Extraordinary and Compelling Reasons to Reduce Toledo's Sentence Pursuant to 18
11      U.S.C. § 3582(c)(1)(A)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12  a.   The COVID-19 Pandemic. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

13  b.   The Defendant's Health Condition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

14  c.   The Combination of the COVID-19 Pandemic with Toledo's Health Condition and
        Immigration Status Support Granting the Motion for Compassionate Release. . . . . . . . . 10

15
16  4.   A Review of the Mitigating Factors under 18 U.S.C. § 3553(a) Also Supports
        the Reduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

17  a.   The Nature and Circumstances of the Offense. . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18  b.   The History and Characteristics of the Defendant. . . . . . . . . . . . . . . . . . . . . . . . . 15

19  c.   The Need for the Sentence to Reflect the Seriousness of the Offense, Promote
        Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence,
20      and Protect the Public. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

21  d.   The Need to Avoid Disparity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

22  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

23

24

25

26

# TABLE OF AUTHORITIES

**CASES:**

*United States v. Arreola-Bretado*, 2020 U.S. Dist. LEXIS 90846 (S.D. Cal. May 15, 2020). . . . 12

*United States v. Barrenechea*, No. 92-cr-00403-MMC, Dkt. 2446
(N.D. Cal. May 7, 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Bean*, 371 F.Supp.3d 46 (D. N.H. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Brooker,* 2020 U.S. App. LEXIS 30605 (2nd Cir. September 25, 2020). . . . . . . 4

*United States v. Burrill*, 2020 WL 1846788 (N.D. Cal. Apr. 10, 2020). . . . . . . . . . . . . . . . . . . 11

*United States v. Campagna*, 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020). . . . . . . . . . . . . . . . 10

*United States v. Charles*, 581 F.3d 927 (9th Cir. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United  States v. Colvin*, 2020 U.S. Dist. LEXIS 57962 (D. Conn. Apr.2, 2020). . . . . . . . . . . . . 4

*United States v. Ebbers*, 2020 U.S. Dist. LEXIS 3746 (S.D.N.Y January 8, 2020). . . . . . . . . . . 5

*United States v. Fischman*, 2020 WL 2097615 (N.D. Cal.  May 1, 2020). . . . . . . . . . . . . . . . . 11

 *United States v. Fobbs*, No. 19-cr-00410-WHA, Dkt. 40 (N.D. Cal. April 28, 2020). . . . . . . . . 11

*United States v. Hernandez,* 18 Cr. 834-04 (PAE) (S.D.N.Y April 2, 2020). . . . . . . . . . . . . . . . 10

*United States v. Jebsen,* 2020 U.S. Dist. LEXIS 57007 (D.Ct. Conn. April 1, 2020). . . . . . . . . 3-5

*United States v. Mel*, 2020 U.S. Dist. LEXIS 74491 (D. Md. Apr. 28, 2020). . . . . . . . . . . . . . . 12

*United States v. Morrison*, 2020 U.S. Dist. LEXIS 110734 (D. Md. June 24, 2020). . . . . . . . . . 12

*United States v. Morrison*, No. 18-cr-00238-CRB, Dkt. 72 (N.D. Cal. Apr. 29, 2020). . . . . . . . 11

*United States v. Muniz*, 2020 WL 1540325 (S.D. Tex. Mar. 30, 2020).. . . . . . . . . . . . . . . . . . . 10

*United States v. Nawanna*, 321 F.Supp.3d 943 (N.D. Iowa 2018). . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Olawoye*, 2020 U.S. Dist. LEXIS 141637 (D.C. August 7, 2020). . . . . . . . . . 12

*United States v. Perez*, No. 17 Cr. 513 (AT) (S.D.N.Y April 1. 2020). . . . . . . . . . . . . . . . . . . . . 10

*United States v. Taj Armon Reid*, 17-cr-00175-CRB-2 (N.D. Cal. May 5, 2020). . . . . . . . . . . . 10

*United States v. Reyes-De La Rosa*,
2020 U.S. Dist. LEXIS 118406 (S.D. Texas July 7, 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Rivera*, 2020 WL 2213469 (N.D. Cal. Apr. 13, 2020). . . . . . . . . . . . . . . . . . . . 11

*United States v. Rivernider*, 2020 U.S. Dist. LEXIS 21292 (D. Conn. Feb. 7, 2020). . . . . . . . . . . 4

*United States v. Robinson*, 2020 WL 1982872 (N.D. Cal. Apr. 27, 2020). . . . . . . . . . . . . . . . . 11

*United States v. Rodriguez*, 2020  U.S. Dist. LEXIS 58718 (E.D. Pa. Apr. 1, 2020). . . . . . . . . . . 4

*United States v. Sarpong*, 2020 U.S. Dist. LEXIS 170559
(S.D. New York September 17, 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Trent*, 2020 WL 1812214 (N.D. Cal. Apr. 9, 2020). . . . . . . . . . . . . . . . . . . . 6, 11

*United States v. Vo*, No. 15-cr-00310-BLF-2, Dkt. 207 (N.D. Cal. May 7, 2020). . . . . . . . . . . 11

*United States v. Zukerman*, 2020 U.S. Dist. LEXIS 59588 (S.D.N.Y.  Apr. 3, 2020). . . . . . . . . . 4

**STATUTES AND RULES**

18 U.S.C. § 3142(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13

18 U.S.C. § 3582(c)(1)(A)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

21 U.S.C. § 841(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 846. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 994(t). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

U.S.S.G. § 1B1.13. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

1  JOHN J. JORDAN, ESQ. (State Bar No. 175678)
   601 Montgomery Street, Suite 850
2  San Francisco, CA 94111
   Tel:  (415) 391-4814
3  Fax: (415) 391-4308
   jjordanesq@aol.com
4
   Counsel for Defendant
5  VALENTIN CAMACHO TOLEDO

6              IN THE UNITED STATES DISTRICT COURT

7            FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                    SAN FRANCISCO DIVISION

9   UNITED STATES OF AMERICA,        )   No. CR 16-0382-HSG
                                     )
10             Plaintiff,            )   **DEFENDANT'S MEMORANDUM IN**
                                     )   **SUPPORT OF MOTION FOR**
11  v.                               )   **COMPASSIONATE RELEASE**
                                     )   **PURSUANT TO 18 U.S.C.**
12  VALENTIN CAMACHO TOLEDO,         )   **§3582(c)(1)(A)(i)**
                                     )
13             Defendant.            )   Date:   October 20, 2020
                                     )   Time:  10:30 a.m.
14                                   )   Hon. VINCE CHHABRIA
    _____)
15

16                         **INTRODUCTION**

17         The defendant, VALENTIN CAMACHO TOLEDO, through counsel of record, John J.

18  Jordan, hereby files this motion for compassionate release pursuant to 18 U.S.C. §

19  3582(c)(1)(A)(i), to reduce his 121 month sentence to time served, followed by immediate

20  removal to Mexico, the defendant's country of origin.

21         The defendant brings this motion because he is incarcerated at CI McRae, a privately run

22  prison holding federal inmates, where there has been reported COVID-19 cases, placing him at

23  great risk because of his health conditions.  The PSR indicates that the defendant at the time of

24  sentencing suffered from asthma and bronchitis in his youth with the last medication treatment

25  being when he was age 15; was reportedly taking medication to control his high blood pressure;

26  reported a history of using medication for the treatment of gout and high cholesterol both of

Toledo Mtn Release                    1

1  which were then under control; and, according to his sister, was borderline diabetic.  PSR ¶ 95.

2  The medical records received from CI McRea indicate that the defendant is obese and suffers

3  from hypertension.  See excerpted medical records, attached as Exhibit C.  The defendant's

4  medical condition, coupled with the impossibility of practicing social distancing and other

5  protective measures while at the facility, support granting a compassionate release, particularly as

6  he is essentially now being housed at the government's expense until his inevitable deportation to

7  Mexico.  In addition, the defendant's positive work while incarcerated supports release.

8      The defendant's current release date is July 7, 2024, according to the BOP inmate locator

9  website.  Toledo has a viable release plan, as he will accept immediate deportation to Michoacán,

10  Mexico, his country of origin, where his sister and other siblings live.  PSR 80.

11      Toledo submits he has exhausted, to the best of his abilities, all pre-requisites to this

12  Court gaining jurisdiction over this motion for compassionate release under 18 U.S.C. §

13  3582(c)(1)(A)(i), as his application to the Warden of CI McRae for compassionate release

14  (Exhibit A) was denied by the warden on August 24, 2020.  Exhibit B.

15      Counsel further advises that Toledo waives any right to appear at a hearing on this motion

16  and instead requests the Court consider the motion as soon as possible.

17                    **FACTUAL AND PROCEDURAL BACKGROUND**

18      This case arises from the defendant's involvement with a drug trafficker in the Bay Area,

19  who has been separately prosecuted by the government.

20      On July 19, 2016, a thirty-three count Superseding Indictment was filed in the Northern

21  District of California, adding additional defendants.  PSR 2.  Valentin Camacho Toledo was

22  charged in count 1 with Conspiracy to Distribute and Possess with Intent to Distribute Heroin

23  and Methamphetamine, in violation of 21 U.S.C. § 846; and in count 15 with Distribution and

24  Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1).

25  PSR 2, 4.

26      On March 30, 2017, the defendant entered a plea of guilty, pursuant to a written plea

Toledo Mtn Release                    2

1  agreement, to Counts 1 and 15 of the superseding Indictment.  PSR 4.  The plea involved a 10

2  year mandatory minimum sentence.  PSR 102.  The plea agreement bound the parties to jointly

3  recommend a variant sentence of between 121 and 151 months.  PSR 5.

4       In the PSR, the probation officer also agreed with the parties' recommended variance.

5  While acknowledging weight of the drugs involved as well as the defendant's prior deportation

6  and two less serious drug related convictions, the probation officer also noted that the defendant

7  will likely be forced to return to Mexico as a result of this conviction; there was no evidence to

8  suggest the defendant was an organizer or leader, manager or supervisor of others within a

9  criminal organization; his conduct did not involve violence, firearms, trafficking of drugs to or

10  with minors, or death or serious bodily injury; he lacks a formal education; and he suffered the

11  significant loss of his parents and two siblings.  PSR sentencing recommendation,  page 3.

12       On April 24, 2018, this Court sentenced the defendant to concurrent 121 month terms of

13  incarceration under counts 1 and 15, to be followed by 5 years supervised release, and a $200

14  special assessment.  Dkt. No. 667.

15                                              **ARGUMENT**

16  **A.     Introduction**

17       Mr. Toledo now asks the Court to grant his compassionate release, pursuant to 18 U.S.C.

18  § 3582(c)(1)(A)(i), by reducing his 121 month sentence to time served, so that the defendant can

19  be released and deported to Mexico.  The Covid-19 pandemic, Toledo's health situation, and his

20  immigration status, all combine to constitute extraordinary and compelling reasons to reduce his

21  sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

22  **B.     Applicable Law**

23       "The First Step Act of 2018 amended the procedural requirements for a motion to reduce

24  sentence to provide compassionate release."  *United States v. Jebsen,*  2020 U.S. Dist. LEXIS

25  57007  (D.Ct. Conn. April 1, 2020), citing 18 U.S.C. § 3582(c)(1)(A).  Under the 2018

26  amendment, a federal inmate may now move for compassionate release "after the defendant has

1   fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

2   motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

3   warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).  "Previously,

4   only the BOP could move for compassionate release and such motions were rarely filed." *United*

5   *States v. Jebsen*, *supra,* citing *United States v. Rivernider*, 2020 U.S. Dist. LEXIS 21292, 2020

6   (D. Conn. Feb. 7, 2020).

7        The Second Circuit, in *United States v. Brooker*, 2020 U.S. App. LEXIS 30605 (2nd Cir.

8   September 25, 2020), just held that "the First Step Act freed district courts to consider the full

9   slate of extraordinary and compelling reasons that an imprisoned person might bring before them

10  in motions for compassionate release.  Neither Application Note 1(D), nor anything else in the

11  now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id*., at *20.

12  The Court further stated that "Moreover, these arguments may also interact with the present

13  coronavirus pandemic, which courts around the country, including in this circuit, have used as a

14  justification for granting some sentence reduction motions." *Id., at* 23, citing *United States v.*

15  *Zukerman*, 2020 U.S. Dist. LEXIS 59588 (S.D.N.Y.  Apr. 3, 2020) (granting compassionate

16  release because of the risk of Covid- 19);  *United  States v. Colvin*,  2020 U.S. Dist. LEXIS

17  57962 (D. Conn. Apr.2, 2020) (same); *United States v. Rodriguez*, 2020 U.S. Dist. LEXIS 58718

18  (E.D. Pa. Apr. 1, 2020) (same).

19        To consider a sentence reduction for compassionate release, a defendant must show that

20  "extraordinary and compelling reasons warrant such a reduction." *United States v. Jebsen*, *supra*,

21  quoting 18 U.S.C. § 3582(c)(1)(A)(i).  "By statute, such reduction must be consistent with

22  applicable policy statements issued by the U.S. Sentencing Commission. § 3582(c)(1)(A). Then,

23  before compassionate release can be granted, the Court must consider the 18 U.S.C. § 3553

24  sentencing factors to the extent relevant." *Id.*  The Court in *Jepsen* pointed out that:

25        "At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the
        circumstances constituting "extraordinary and compelling" reasons. See 28 U.S.C. §
26      994(t). As other courts have recognized, the U.S. Sentencing Commission guidance has

Toledo Mtn Release                          4

not yet been updated to reflect the liberalization of the procedural requirements. *Ebbers*, 2020 U.S. Dist. LEXIS 3746, 2020 WL 91399, at *4.  The Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition may constitute "extraordinary and compelling" circumstances when:

(A) Medical Condition of the Defendant.– (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia. [or]

(ii) The defendant is– (I) suffering from a serious or medical condition, (II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Commentary Application Note 1(D) contains a residual clause to provide relief for other "extraordinary and compelling reasons" as determined by the Director of the Bureau of Prisons.

*United States v. Jebsen*, *supra*, citing U.S.S.G. 1B1.13, Commentary Application Note 1(A).

The defendant bears the burden of showing that he is entitled to a sentence reduction.

*United States v. Jebsen*, *supra*.

## C.     Legal Analysis

## 1.     The Motion is Properly Before the Court

First, the Court should find that Toledo's motion is properly before the Court pursuant to 18 U.S.C. § 3582(c)(1)(A) because he exhausted available appeals to the BOP for compassionate release.

Toledo administratively applied for compassionate release to the Warden of McRae Correctional Facility, where he is currently incarcerated, by submitting the attached Application for Compassionate Release based on the COVID-19 pandemic posing increased risk of infection for inmates.  Exh. A.  On August 24, 2020, the defendant received the attached denial by the Warden at McRae Correctional Facility.  Exh. B.  Thirty days have now passed since that denial, giving this Court jurisdiction to consider this motion.  See 18 U.S.C. § 3582(c)(1)(A).

**2.      The Defendant's Waiver in the Plea Agreement Should Not Be Enforced**

The government may argue that the defendant's plea agreement "expressly waived the right to file any motion attacking his sentence and waived the right to seek any relief under 18 U.S.C. § 3582 in his plea agreement."  Plea Agreement ¶ 5.

However, Judge Breyer recently rejected this argument in *United States v. Trent*, No. 16-CR-00178-CRB-1, 2020 WL 1812214 (N.D. Cal. Apr. 9, 2020).  In the court's order, Judge Breyer ruled that: "Such waivers are enforceable only if '(1) the language of the waiver encompasses [the relief sought], and (2) the waiver is knowingly and voluntarily made.'" *United States v. Charles*, 581 F.3d 927, 931 (9th Cir. 2009).  Courts construing a plea agreement must determine "what the defendant reasonably understood to be the terms of the agreement when he pleaded guilty." *Id*. (internal quotation marks and citations omitted).  "Ambiguities are to be construed against the drafter, typically the government." *Id*.

Judge Breyer concluded that neither condition for enforceability was met, writing that "The language of the waiver as it would reasonably have been understood by Trent at the time of his guilty plea does not encompass the relief he seeks, because that relief did not exist when he pled guilty." *Id*.

Judge Breyer also pointed out that: "In the alternative, and for the same reason, Trent did not knowingly waive his right to move for compassionate release.  It is impossible to "knowingly" waive a right that does not yet exist.  Nor could Trent have understood at the time that waiving his right to early release would put him in mortal danger from a global pandemic. See Order Granting Compassionate Release (dkt. 106) at 3–4." *Id*.

Here, defendant Toledo is in the exact same situation.  He pled guilty before the First Step Act took effect on December 21, 2018, and so the relief he seeks now did not exist when he too pled guilty.  He could not knowingly waive a right that did not yet exist.  And, Toledo could not have understood that any waiver would encompass a COVID-19 compassionate release motion, and therefore should not be enforced.

Toledo Mtn Release                                  6

**3.**  **The COVID-19 Pandemic and Toledo's Health and Immigration Status Constitute Extraordinary and Compelling Reasons to Reduce His Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).**

**a.**  **The COVID-19 Pandemic**

In 2018, when the Court sentenced Toledo, the impact of the COVID-19 pandemic was unknown and thus not appreciated by the parties.  It was expected that Toledo would be sentenced, then transferred to a Federal facility, and serve out the remainder of his sentence, in relative safety, before being deported to Mexico.  All that is changed.  As of September 28, 2020, there are a reported 33 million COVID-19 cases worldwide.  In the United States, there are a reported 7.1 million cases with over 204,000 deaths.

Now the defendant is incarcerated in a facility where there has been an outbreak of COVID-19, and where he faces a heightened risk of serious complications or death if he contracts the virus.

The Federal BOP reports that as of September 28, 2020, there were 14,382 federal inmates who have ever tested positive for COVID-19, with 124 inmate deaths attributed to the COVID-19 disease (four on home confinement).  https://www.bop.gov/coronavirus (September 28, 2020).

At CI McRea, where the defendant is currently housed, an inmate currently has a confirmed active case of COVID-19.  *Id.*

Counsel for Toledo could not locate summary statistics for CR McRea on the BOP website, perhaps because CI McRea is a private institution under contract to the BOP.  However, in a April 21, 2020 newspaper article entitled "Federal officials say they will begin reporting coronavirus cases in private prisons" the News Observer reported that "a CoreCivic spokesperson said 17 staffers at its McRae Correctional Facility in Telfair County, Georgia, have the virus . . .  The bureau [Bureau of Prisons] later reported in an email that 10 inmates had tested positive at the facility, and three of them have recovered." www.newsobserver.com/news/local/ article242181266.html#storylink=cpy.

1    These statistics were obviously not known to the Court back in 2018 when sentencing

2    Toledo.  In light of these facts now known to the Court, and bearing in mind Toledo's unique risk

3    factor because of his health condition, as well as his immigration status, counsel submits that the

4    totalities of the circumstances here constitute "extraordinary and compelling" reasons to grant

5    compassionate release under 18 U.S.C. § 3582(c)(1)(A).

6    The Federal Government itself has recognized the risks posed by the COVID-19

7    pandemic.  In his memorandum of March 26, 2020, Attorney General Barr urged home

8    confinement for some inmates at federal prisons.  Even though these prisoners had been

9    convicted of federal crimes, Attorney General Barr recognized that the COVID-19 pandemic

10   necessitated a reconsideration of who should remain incarcerated during this crisis.

11   The Federal Bureau of Prisons responded.  In response to the Attorney General Barr's

12   directives, the BOP began immediately reviewing all inmates who have COVID-19 risk factors

13   "Since the original memo to the Bureau of Prisons on March 26, 2020 instructing us to prioritize

14   home confinement as an appropriate response to the COVID-19 pandemic, the BOP has placed

15   an additional 7,737 inmates on home confinement."  www.bop.gov/coronavirus/ (September l 28,

16   2020).  But, Toledo is not eligible for release because of his immigration status.

17   Toledo's detention robs him of any realistic opportunity to maintain the "social distance"

18   that over 300 million fellow citizens are being asked to do by government officials.  Toledo's

19   confinement in an environment long associated with high transmission of infectious disease and

20   with limited access to health care raises a grave risk to his health that now outweighs the

21   government's interest in detaining him.

22   The growth in cases in prison and jail is easily understood.  Dr. Brie Williams, Professor

23   of Medicine at the University of California, San Francisco ("UCSF") in the Geriatrics Division,

24   Director of UCSF's Amend: Changing Correctional Culture Program, and Director of UCSF's

25   Criminal Justice & Health Program, has stated in her attached declaration that "Because inmates

26   live in close quarters, there is an extraordinarily high risk of accelerated transmission of

1   COVID-19 within jails and prisons."  See Exhibit D, Attached Declaration, page 3.  Dr. Williams

2   opines that "Inmates share small cells, eat together and use the same bathrooms and sinks. They

3   eat together at small tables that are cleaned only irregularly. Some are not given tissues or

4   sufficient hygiene supplies.  Effective social distancing in most facilities is virtually impossible,

5   and crowding problems are often compounded by inadequate sanitation, such as a lack of hand

6   sanitizer or sufficient opportunities to wash hands."  Declaration at page 3.

7   **b.      The Defendant's Health Condition**

8          Moreover, Mr. Toledo has underlying medical conditions that place him at a heightened

9   risk of becoming severely ill or dying from COVID-19, which include suffering from obesity and

10  hypertension.

11         The PSR indicates that the defendant, at the time of sentencing, suffered from asthma and

12  bronchitis in his youth with the last medication treatment being when he was age 15; was

13  reportedly taking medication to control his high blood pressure; reported a history of using

14  medication for the treatment of gout and high cholesterol both of which were then under control;

15  and, according to his sister, was borderline diabetic.  PSR ¶ 95.

16         Medical records received from CI McRae indicate that as of August 18, 2020, the

17  defendant's active health conditions include hypertension and obesity.  Exh. C.  As recently as

18  July 27, 2020, the defendant was proscribed Lisinopril.  Exh. C.  According to the NHS,

19  "Lisinopril is a medicine to treat high blood pressure and heart failure."

20  www.nhs.uk/medicines/lisinopril.

21         The CDC has recognized that people who suffer from obesity have a higher risk of

22  suffering severe complications or death from COVID-19.  www.cdc.gov/coronavirus/2019-ncov/

23  need-extra-precautions/index.html (Updated September 11, 2020).  The CDC has also opined

24  that people who suffer from hypertension might be at an increased risk of suffering severe

25  complications from COVID-19.  *Id.*

26         Thus, Toledo now suffers from two conditions that are risk factors of suffering severe

Toledo Mtn Release                              9

1  complications if he contracts COVID-19, with a medical history that includes past conditions

2  (PSR 93) that might also put him at risk.

3  **c.     The Combination of the COVID-19 Pandemic with Toledo's Health Condition and Immigration Status Support Granting the Motion for Compassionate Release**

4

5       The COVID-19 pandemic, combined with defendant's health and immigration status,

6  support granting a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

7       In *United States v. Hernandez,* 18 Cr. 834-04 (PAE) (S.D.N.Y April 2, 2020), District

8  Judge Engelmayer, in evaluating the case of a defendant originally sentenced to a 24 month term

9  of imprisonment, with 4 months left, found that "in light of the heightened medical risk presented

10  to Mr. Hernandez by the COVID-19 pandemic, there are extraordinary and compelling reasons to

11  reduce Mr. Hernandez's sentence in the manner requested--to wit, releasing Mr. Hernandez from

12  custody and requiring him to serve his first four months of supervised release in home

13  confinement, on specified conditions."  Order at ECF 451.

14       Judge Engelmayer also commented in his order that "numerous courts, including this one,

15  have ordered the temporary release from custody of inmates held in pretrial or presentencing

16  custody."  Order at pp. 5-6   Judge Engelmayer also pointed out that:

17       "And while the requirement of administrative exhaustion appears thus far to
         have limited the number of cases in which defendants serving their sentences have
18       obtained compassionate relief from a court under § 3582(c)(1)(A)(i), at least two courts,
         finding administrative exhaustion, have resolved such a claim and granted such relief. See
19       *United States v. Muniz*, No. 4:09-Cr-0199-1, 2020 WL 1540325 (KPE), at *1-2 (S.D.
         Tex. Mar. 30, 2020) (finding extraordinary and compelling reasons under §
20       3582(c)(1)(A)(i) in light of heightened risk to inmate presented by COVID-19); *United
         States v. Campagna*, No. 16 Cr. 78-01, 2020 WL 1489829 (LGS), at *3 (S.D.N.Y. Mar.
21       27, 2020) (same); cf. *United States v. Perez*, No. 17 Cr. 513 (AT), Dkt. 98 at 2, 6-7
         (finding extraordinary and compelling reasons under § 3582(c)(1)(A) and waiving
22       requirement of exhaustion of administrative remedies)."

23  Order at p. 6.

24       Judge Breyer in this district recently granted compassionate release in the case of *United*

25  *States v. Taj Armon Reid*, 17-cr-00175-CRB-2 (N.D. Cal. May 5, 2020), based on similar

26  grounds to this case.  Other courts in this district that have granted compassionate release in such

Toledo Mtn Release                10

1   cases as *United States v. Barrenechea*, No. 92-cr-00403-MMC, Dkt. 2446 (N.D. Cal. May 7,

2   2020) (granting compassionate release to elderly inmate with history of latent tuberculosis);

3   *United States v. Vo*, No. 15-cr-00310-BLF-2, Dkt. 207 (N.D. Cal. May 7, 2020) (granting

4   compassionate release to 74 year old inmate with hyperlipidemia, hypertension, low vision in

5   both eyes, and osteoarthritis); *United States v. Fischman*,  2020 WL 2097615, at *2 (N.D. Cal.

6   May 1, 2020) (granting compassionate release for 72 year old prisoner at FCI Terminal Island

7   who tested positive for COVID-19); *United States v. Morrison*, No. 18-cr-00238-CRB, Dkt. 72

8   (N.D. Cal. Apr. 29, 2020) (granting compassionate release for 74 year old prisoner with prostate

9   cancer, chronic hypertension, hyperlipidemia, recurrent pneumonia, and stage three kidney

10  disease)*; United States v. Fobbs*, No. 19-cr-00410-WHA, Dkt. 40 (N.D. Cal. April 28, 2020);

11  *United States v. Robinson*, 2020 WL 1982872 (N.D. Cal. Apr. 27, 2020) (granting compassionate

12  release for Lompoc inmate with psoriasis); *United States v. Rivera*,  2020 WL 2213469 (N.D.

13  Cal. Apr. 13, 2020) (granting compassionate release of inmate with end stage liver failure and

14  heart failure); *United States v. Burrill*, 2020 WL 1846788 (N.D. Cal. Apr. 10, 2020) (granting

15  compassionate release for FCI Duluth prisoner who is 75 years old and suffered from asthma,

16  high blood pressure, high cholesterol, diabetes, diverticulosis, blood clots, hearing loss,

17  glaucoma, cataracts, and lower back nerve pain); and *United States v. Trent*, 2020 WL 1812214

18  (N.D. Cal. Apr. 9, 2020) (granting compassionate release for inmate with HIV/AIDS, diabetes,

19  and obesity).

20        The defendant here raises similar concerns.  He is being housed at CI McRea, where

21  other inmates have contracted COVID-19.  He suffers from obesity and hypertension, which

22  places him at high risk of death or serious complications if he contracts COVID-19.

23        In addition, the government is paying to house Toledo in a private prison, when he is

24  willing to accept immediate deportation after already serving a significant portion of his

25  sentence.  He is willing to stipulate to his deportation as a condition of the granting of this

26  motion.  The PSR notes that he already has a prior deportation and two serious drug convictions

1   (PSR sentencing recommendation, page 3), leaving little doubt as to his deportation once

2   released from Federal prison.

3          Other federal district courts have recognized that the certainty of deportation can be a

4   factor considered in deciding a motion for compassionate release.  In *United States v. Sarpong*,

5   2020 U.S. Dist. LEXIS 170559 (S.D. New York September 17, 2020), the court held that "In

6   combination with Mr. Sarpong's relatively modest disciplinary record, his medical conditions,

7   and the ongoing global pandemic, the individual circumstances of his deportation, proffered

8   14-day quarantine, and residence with his family mitigate any danger his offense of conviction

9   suggests he may still pose.  Accordingly, the Court finds that Mr. Sarpong does not pose a danger

10  to the safety of any other person or the community." *Id*., citing 18 U.S.C. § 3142(g).

11         Similarly, in *United States v. Olawoye*, 2020 U.S. Dist. LEXIS 141637 (D.C. August 7,

12  2020), the court held that "considering the individual history and characteristics of this

13  defendant, the Court finds that compassionate release now with impending removal to Nigeria

14  would not pose a serious danger to the community."  *Id*., see also *United States v. Reyes-De La*

15  *Rosa*, 2020 U.S. Dist. LEXIS 118406 (S.D. Texas July 7, 2020).

16         The court in *Reyes-De La Rosa* noted that "Other courts have granted compassionate

17  release to undocumented defendants under similar circumstances."  *Id., citing United States v.*

18  *Morrison*, 2020 U.S. Dist.LEXIS 110734 (D. Md. June 24, 2020) (reducing a defendant's

19  sentence to time served because he had potential prostate cancer; he was not a danger to the

20  community; and he would be released to ICE or CBP custody after release to be deported to

21  Jamaica); *United States v. Arreola-Bretado*, 2020 U.S. Dist. LEXIS 90846 (S.D. Cal. May 15,

22  2020) (reducing a defendant's sentence to time served based on, in part, her serious medical

23  conditions; her ineligibility for release to home confinement because she would be deported; and

24  the fact that she has served sixty percent of her sentence); *United States v. Mel*, 2020 U.S. Dist.

25  LEXIS 74491 (D. Md. Apr. 28, 2020) (reducing a defendant's sentence to time served

26  because she had potential cancer for which she was not receiving necessary medical care; she

was not a danger to the community; and her requested reduction in sentence was limited to two weeks).

Here, similarly, Toledo's immigration status supports release.  He appears to be serving his sentence without incident at CI McRae and doing his best to better himself.  The attached certificates show he has furthered his education, worked at carpentry and barbering, and prepared himself for his release.  Exhibit F.  He has risk factors for COVID-19, but is ineligible for home confinement because he would be deported.  His current release date of July 7, 2024, indicates he has done a bit more than half of his 10 year sentence, taking into account good-time credits.  He would not be a danger to this community if he was released and deported, and he has a viable release plan to return to his family in Mexico.

Thus, the combination of defendant's health status, immigration status, and the COVID-19 pandemic, all support granting the motion.

**4.    A Review of the Mitigating Factors under  18 U.S.C. § 3553(a) Also Support the Reduction.**

Moreover, a review of the mitigating factors under  18 U.S.C. § 3553(a) also support the reduction.

**a.    The Nature and Circumstances of the Offense.**

The distribution of methamphetamine is certainly a serious offense, and the quantity here was significant.  Mr. Toledo accepts responsibility for his participation in this offense and agrees that punishment is appropriate.

However, there are also unique mitigating circumstances in this case relating to the nature and circumstances of the offense.

First, he was vulnerable to the approach of the major players in this case because of his well-known alcohol and methamphetamine addiction.  He was not thinking clearly at the time, and repeatedly used methamphetamine throughout the events in the indictment.

Second, although the quantity of methamphetamine was admittedly large and the purity

1   high, the purity and amount was in the control of the principals, who asked the defendant to store

2   the drugs for them.  The defendant faced a high guideline sentence and a 10 year mandatory

3   minimum because of the purity of the methamphetamine that was sold.  While the guidelines

4   take purity into account for methamphetamine, a number of district courts have rejected the 10:1

5   mixture-to-actual methamphetamine ratio based on policy disagreements with the Guidelines.  In

6   *United States v. Bean*, the district court judge joined those cases and declared "a categorical

7   policy disagreement with the methamphetamine guidelines [because] (1) there appears to be no

8   empirical basis for the Sentencing Commission's harsher treatment of offenses involving higher

9   purity methamphetamine; (2) methamphetamine purity is no longer an accurate indicator of a

10  defendant's role in a drug-trafficking conspiracy; and (3) the methamphetamine guidelines create

11  unwarranted sentencing disparities between methamphetamine offenses and offenses involving

12  other major drugs."  *United States v. Bean*, 371 F.Supp.3d 46, 51 (D. N.H. 2019) (citing cases);

13  see also *United States v. Nawanna,* 321 F. Supp. 3d 943, 955 (N.D. Iowa 2018) (rejecting

14  purity-based disparity and recalculating the base offense level by treating all methamphetamine

15  attributable to the defendant as a methamphetamine mixture).

16         Here, Mr.  Toledo certainly had no control over the purity of the drugs produced

17  elsewhere.  In this situation, the guidelines score is being driven by factors that really have little

18  or nothing to do with the defendant's individual culpability.

19         Third, Mr. Toledo forthrightly dealt with this issue by pleading guilty early on, before

20  filing any pre-trial motions.  He expressed his guilt fully at his plea and to the probation

21  department.  Mr. Toledo then submitted his own letter to this Court at sentencing, expressing his

22  remorse, and explaining what he has tried to do to better himself by forwarding documentation

23  for the courses he has taken while incarcerated in this case on pre-sentencing detention.  Those

24  documents corroborated the extensive steps Mr. Toledo has taken to prepare for a life outside of

25  drugs when he is finally released.

26

**b.      The History and Characteristics of the Defendant.**

The defendant submits that this factor strongly supports his sentencing recommendation.

The defendant is the youngest of his 13 siblings all of whom were born and raised in poverty-stricken Michoacán, Mexico.  Although the defendant remembers his young years fondly, the photograph of the family dwelling he provided to the Probation Officer is remarkable for its stark poverty it portrays.  Exh. E.  It would be hard to exaggerate the impact the photograph had during the Probation interview.  The probation officer accurately describes the residence as "slats of wood as the walls of the home; however, the slats were not secured together which allowed weather and other environmental elements into the home. The floor of the home appeared to be dirt with no solid foundation."  PSR 84.  The defendant "explained that the family had to place buckets throughout the home when it rained to prevent flooding."  PSR 84.  A copy of the photograph is attached as Exhibit E.

The defendant's father was the pillar of this large family and provided modestly for the family as a farm worker.  However, when the defendant was six years of age, his father fell ill, and he died a year later.  PSR 83, 85.

The PSR details that, at the age of 18, the defendant tried to care for his mother, who suffered from diabetes and heart issues.  PSR 86.  The disease eventually lead to an amputation of her leg and her death. During this time, the defendant's older brother also died.  Because the defendant was desperate to cover his mother's medical expenses, he eventually quit working and reached out to his cousin asking how to earn money selling drugs.  When the defendant was 20 years of age, he returned to Mexico when his mother became ill and underwent heart surgery, from which she died. PSR 86.  The PSR notes that the "loss of his mother led to his heavy use of drugs and alcohol.  He stated he was never involved with substance abuse before the death of his mother, he states that he "lost himself" to his addiction."  PSR 86.

The defendant's addiction problems continued from the time of his mother's death until his arrest here. He drank constantly and rushed through family activities with his wife and

Toledo Mtn Release                              15

1  children so he could return to his garage to drink and do drugs.  PSR 89.  The defendant has told

2  counsel and the probation officer that it was during the time of his heavy addiction that he was

3  often approached by others to store and transport drugs in exchange for paying his bills.  This

4  conduct lead to his arrest in the instant offense.  PSR 89.

5  Now that the defendant is drug free, he is doing well in prison.  The attached certificates

6  show he has not been wasting him time, but doing his best to better himself.  Exhibit F.  These

7  steps show a commitment to someone determined to avoid the criminal activity that got him into

8  trouble in this case.

9  Moreover, Mr. Toledo continues to have the strong support of his family, particularly his

10  wife.  His family has been supporting him throughout this time.  PSR 37, 38.  His wife went to

11  every court appearance and visited the defendant regularly.  The family has been in touch with

12  counsel regarding this motion, and confirm that the defendant agrees to be deported and live with

13  his sister in Michoacán.

14  Finally, before this case, Mr. Toledo had a criminal record, but many of his convictions

15  stemmed from his drug addiction.  PSR 68-73.  The Probation Officer agrees that the defendant's

16  criminal history III  is overstated, stating that "In light of the defendant's relatively minor criminal

17  history, a Criminal History Category III substantially over-represents the seriousness of the

18  defendant's criminal history. Further, he has no history of violence or weapons offenses."  PSR

19  Sent. Recommendation, page 2.

20  For these reasons, the parties all agreed to recommend a variant sentence of 121 months

21  at sentencing.  Those same reasons now support a compassionate release.

22  **c.    The Need for the Sentence to Reflect the Seriousness of the Offense, Promote
            Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and
23          Protect the Public.**

24  The defendant acknowledges that his offense is a serious matter, and is certainly aware of

25  the consequences of his actions.  However, Mr. Toledo, who was remanded into pre-trial custody

26  on this case on  December 10, 2015 and stayed in custody through sentencing (PSR page 2), has

1   now served approximately 57 months in prison, the equivalent of a 5 year sentence minus good

2   time.  Counsel submits that this is adequate punishment in this case.  Further, as the defendant

3   will be deported, his release will in no way endanger the American public.

4   **d.      The Need to Avoid Disparity.**

5          The defendant notes that the Court sentenced the main players in this case in a range of

6   10 years and up.  The main defendants handled the more serious distribution, some resulting in

7   death.  Other defendants received lower sentences of 48 to 52 months, with some more minor

8   figures receiving no time sentences.  For these reasons, the defendant submits that a reduced

9   sentence to 57 month is in the range of appropriate sentences.

10                                    **CONCLUSION**

11          The defendant asks this Court to reduce his sentence to 57 months, or time served,

12   followed by 5 years supervised release, with a condition that he consent to immediate removal to

13   Mexico, his country of origin, upon release from the BOP on this case.

14   DATED: September 29, 2020.            Respectfully submitted,

15

16                                    */s/ John J. Jordan*
                                      JOHN J. JORDAN

17

18

19

20

21

22

23

24

25

26

Toledo Mtn Release                    17

1    JOHN J. JORDAN, ESQ.   (Cal. State Bar No. 175678)
     601 Montgomery Street, Suite 850
2    San Francisco, CA   94111
     (415) 391-4814
3    (415) 391-4308 (FAX)
     jjordanesq@aol.com
4
     Attorney for Defendant
5    VALENTIN CAMACHO TOLEDO

6                        UNITED STATES DISTRICT COURT

7                    NORTHERN DISTRICT OF CALIFORNIA

8                        SAN FRANCISCO DIVISION

9    UNITED STATES OF AMERICA,   )        No. CR-15-0579-VC
                                  )
10                     Plaintiff, )
                                  )
11   V.                           )        **DECLARATION OF COUNSEL IN**
                                  )        **SUPPORT OF MOTION FOR RELEASE**
12   VALENTIN CAMACHO TOLEDO,     )
                                  )
13                     Defendant. )
     _____)

14

15       **DECLARATION OF COUNSEL IN SUPPORT OF MOTION:**

16       I, JOHN J. JORDAN, am an attorney licensed to practice in the State of California and do

17   hereby declare under the penalty of perjury as follows:

18       1.  I am the attorney of record for Defendant Valentin Camacho Toledo.  I have reviewed

19   the attached Motion, and I believe the factual statements made therein are true and correct to the

20   best of my information and belief.

21       2.  In preparing this motion, I have reviewed the indictment, the PSR, and other discovery

22   materials provided by the government in this case, the medical records provided by CI McRae, as

23   well as the defendant's case file.

24       3.  On August 6, 2020, I submitted an application for compassionate release, based on the

25   COVID-19 pandemic and the defendant's health, on behalf of the defendant on the Warden of CI

26   McRae.  I have attached a copy of that application as Exhibit A.

     Toledo Mtn Release                          1

4.  On August 24, 2020, I received a copy of the denial of the motion for compassionate release from the Warden, CI McRae.  I have attached a copy of that denial as Exhibit B.

5.  On approximately September 3, 2020, I received a set of medical records for the defendant from CI McRae.  I have attached as Exhibit C excerpts of the medical records, with the permission of the defendant, and provided a full set of the records to AUSA Frank Riebli.

6.  I have attached to this motion as Exhibit D the declaration of Dr. Brie Williams, and a photograph of the defendant's childhood home as Exhibit E.

7.  On September 29, 2020, I spoke with the defendant and his family.  The defendant informed me that he agrees to immediate deportation and plans to live with his sister Carmen Carillo (See PSR 80) in Michoacán, where several relatives of the defendant also live.  The defendant also informed me that he has been in compliance with the rules and regulations at CI McRae, and provided the BOP certificates, attached as Exhibit F.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: September 29, 2020.          */s/ John J. Jordan*
                                    Attorney for Defendant